IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| TRUGREEN COMPANIES, L.L.C., a Delaware limited liability company, and TRUGREEN LIMITED PARTNERSHIP, a Delaware limited partnership,<br><br>Plaintiffs,<br><br>vs.<br><br>KEVIN D. BITTON d/b/a SCOTTS LAWN SERVICE et al.,<br><br>Defendants. | ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION<br><br><br><br>Case No. 1:06-CV-00024 PGC |

      This case is about honoring contracts, the financial consequences of knowing and volitional breaches, and potential injunctive relief to remedy those breaches. Plaintiff Trugreen, a lawn care company, asks its employees to sign noncompetition agreements as a condition of their employment. Some its former employees breached these covenants by working for Scott's Lawn Care, a Trugreen competitor, within the time period and geographic boundaries prohibited by contract. Trugreen has moved the court to enjoin its former employees from further violations of those contracts, and Scotts from facilitating any such breach.

      The court holds that injunctive relief is not warranted here because money damages can compensate Trugreen for any breaches. As such, Trugreen has failed to demonstrate irreparable

injury. But Trugreen has demonstrated a very substantial likelihood of success on the merits. To ensure that final determinations of liability are promptly reached, the court enters the scheduling order as spelled out below.

## FACTUAL BACKGROUND

Trugreen is a lawn care company with offices throughout the United States. It undertakes substantial marketing and sales efforts to establish and maintain its customer base. Trugreen requires its employees to sign confidentiality and noncompetition contracts as a condition of their employment. These contracts restrict their signers from competing or interfering with Trugreen for twelve months after leaving Trugreen's employ.

This dispute started when Ryan Mantz, a former branch manager of Trugreen's Ogden brahc, voluntarily resigned from Trugreen on or about November 1, 2005. Trugreen alleges that within weeks of leaving, Mantz began working for Scotts Ogden, one of Trugreen's direct competitors, and began committing serious violations of his noncompetition agreement. Mantz also allegedly began recruiting other Trugreen employees to join him at Scotts (which was also a violation of their agreements). He also allegedly began soliciting Trugreen customers to switch to Scotts.

To remedy these breaches, Trugreen filed suit against Mantz, Scotts and its employees, and other former Trugreen employees. Trugreen has alleged breach of contract, intentional interference with contractual relations and prospective economic relations, and unfair competition. To date, Trugreen estimates that it has lost $800,000 in sales revenue as a result of five of these defendants leaving, with other significant losses in goodwill and future business. It

seeks to recover these financial losses. Trugreen also seeks injunctive relief to prevent on-going and future conduct that violates the employment agreement.

**I.      Trugreen's Requested Injunction Is Not a "Disfavored Injunction."**

As a preliminary matter, the court will address the defendants' contention that Trugreen's requested injunction is "disfavored." The Tenth Circuit recently emphasized that three types of preliminary injunctions are "specifically disfavored" and, as such, "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."[1] Those three types are: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."[2] The defendants argue that Trugreen's requested injunction is both a type-1 and type-3 disfavored injunction. Because "[t]he failure of the district court to apply the correct standard in evaluating [a disfavored] request for preliminary injunction amounts to an abuse of discretion,"[3] the court will briefly discuss why it disagrees with the defendants' contentions before addressing the four preliminary injunction factors.

First, the requested injunction would not "alter the status quo." "[T]he status quo is the last uncontested status between the parties which preceded the controversy until the outcome of

---

[1] *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc).

[2] *Id.* at 977.

[3] *Schrier*, 427 F.3d at 1258 (quoting *O Centro*, 389 F.3d at 982 n.5).

the final hearing."[4]  In this case, that uncontested status was when defendants were not working for one of Trugreen's competitors.  The injunction seeks to preserve, not alter, the confidentiality and noncompetition obligations the defendants agreed to while Trugreen employees.  The requested injunction is thus not the first type of disfavored injunction.

Second, the injunction would provide more relief than the plaintiffs would receive at the conclusion of a full trial on the merits.  Trugreen seeks to enjoin the defendants from working for Scotts or otherwise competing with Trugreen for the balance of their one-year contractual noncompetition period.  In all reality, that one-year period will have lapsed by the time a full trial on the merits is concluded here.  This extra potential available relief shows that the requested injunction is not the third disfavored type listed above.

## II.     Trugreen Is Not Entitled to a Preliminary Injunction.

"As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."[5]  "[C]ourts should be hesitant to grant the extraordinary interim relief of a preliminary injunction in any particular case . . . ."[6]

A party seeking a preliminary injunction under Rule 65 must prove that:

(1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury . . . outweighs whatever damages the proposed injunction may

---

[4] *Id.* at 1260 (internal quotation marks and citations omitted).

[5] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)).

[6] *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc) .

cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.[7]

After reviewing the voluminous evidence submitted in this case, including the complete deposition transcripts of most of the parties, the court holds that a preliminary injunction is inappropriate here. As discussed in greater detail below, Trugreen's evidence unmistakably shows a likelihood of success on the merits. It does not, however, show that Trugreen will be irreparably injured if the injunction does not issue.

A.   Irreparable Injury

The Tenth Circuit has said that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."[8] The concept of irreparable injury "does not readily lend itself to definition, nor is it an easy burden to fulfill."[9] Case law makes clear, however, "that the injury 'must be both certain and great, and that it must not be merely serious or substantial.'"[10]

In a case involving breach of a contract's exclusivity provisions, the Tenth Circuit said that "the following factors . . . support[] irreparable harm definitions: inability to calculate damages, harm to goodwill, diminishment of competitive positions in marketplace, loss of

---

[7]*Id.* (citations omitted).

[8]*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks and citation omitted).

[9]*Id.* at 1262 (internal quotation marks and citations omitted).

[10]*Id.* (quoting *Prairie Band of Potawotomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)).

employees' unique services, the impact of state law, and lost opportunities to distribute unique products."[11]  These factors are important because, while "irreparable harm often arises from the breach of an exclusivity clause, . . . . courts do not automatically, nor as a matter of course, reach this conclusion.  Rather, they examine whether the harms alleged by the party seeking the preliminary injunction are in fact irreparable, and sometimes conclude in the negative."[12]  This Tenth Circuit case, though specifically concerned with exclusivity provisions, is applicable here because the rules it discussed were based in large part on analogous noncompetition cases.

      The Circuit's statement that "[d]etermining whether irreparable harm exists can be a difficult and close question" is especially applicable here.[13]  Some factors weigh in Trugreen's favor: their competitive position in the marketplace likely has been diminished since November 2005, and Utah law favors enforcement of noncompetition provisions. The former Trugreen employees also stipulated in their contracts that a breach would be irreparable injury.  The fact that the defendants have stipulated to such injury is a factor, but it is not dispositive; the court must still conduct its own inquiry in the matter.

      Even though these factors weigh in favor of finding irreparable injury, the court finds that the injury here is *not* irreparable because Trugreen's damages can be calculated.  Money damages, including lost profits, attorney's fees, and costs associated with hiring and training new employees, will place Trugreen in nearly the same position it would have been had the

---

[11]*Id.* at 1263.

[12]*Id.*

[13]*Id.* at 1262.

defendants not violated their contracts. There is also no evidence that Trugreen's former employees were offering unique services; others could be hired to replace those who have left.

Also worth noting is the limited duration any injunctive relief would be in place. Mantz left Trugreen in November 2005, with others following shortly thereafter. The agreements prevent competitive behavior for one year only. It is not immediately obvious how much "irreparable" injury would be done in the limited three- or four-month period that an injunction would be in place.

In sum, the defendants' actions have undoubtedly caused serious harm to Trugreen. This harm, however, is not clearly irreparable. The latter showing is required to obtain a preliminary injunction. Because Trugreen has failed to make it, an injunction is inappropriate here.

      B.      <u>Likelihood of Success on the Merits</u>

Because the irreparable harm inquiry was so close, the court also examined the other preliminary injunction elements. Based on the submissions received at this early stage, the court's impression is that Trugreen very likely will prevail on its claims at trial. To be sure, the claims in this case involve three separate contract provision — noncompetition, confidentiality, and noninterference — and the court's order here does not address with exacting detail each individual defendant's possible defenses to an alleged breach of each of those provisions. This order therefore does not include the sort of individualized detail that the court would normally include in an order on a summary judgment motion, but instead takes a broader approach to examining Trugreen's likelihood of success on the merits.

The noncompetition agreements that Trugreen's former employees signed appear to be valid and enforceable under Utah and Idaho law.[14]  The defendants make several arguments as to why they are not, and thus why Trugreen is not substantially likely to prevail.  None is persuasive.  They claim that the noncompetition agreements were superceded by subsequent contracts that lacked a noncompetition provision.  The latter agreements, however, appear to supplement rather than replace the noncompetition provisions.

Defendants also claim that they established no personal relationships with Trugreen clients and otherwise were not repositories of Trugreen's goodwill.  This argument strains credulity.  The individual defendants occupied positions with significant amounts of customer interaction.  Evidence shows that the employees sent correspondence to Trugreen's customers with the employees' names on it, thereby becoming the customer's direct contact with Trugreen.  This is precisely the type of interaction that creates "goodwill" with customers and made Trugreen's employees valuable to Scotts.

The defendants also argue that the noncompetition agreements are unenforceable because they are unreasonable in time and geographic scope.  This argument cannot withstand scrutiny.  The agreements prevent competitive behavior for a period of one year from the employee's end date and are geographically limited to regions where the employees worked during the last six

---

[14]*See Systems Concepts, Inc. v. Dixon*, 669 P.2d 421, 426 (Utah 1983); *Freiburger v. J-U-B Engineers, Inc.*, 111 P.3d 100, 105 (Idaho 2005).

months of their employment.  Under Utah law, a two-year time restriction "is clearly, or at least 'probably' reasonable";[15] the agreements' one-year prohibition falls well within that time frame.

Defendants also argue that Trugreen has "unclean hands" since it allegedly required its employees to engage in the illegal practice of "maintenancing" accounts.  This argument is virtually irrelevant to whether the noncompete agreements are enforceable — that is, whether Trugreen is likely to succeed on the merits at trial.  As such, this argument is essentially of no weight to proceedings after the hearing on this motion.

Turning to the contract's noninterference provision, the defendants argue that they will not be liable for violating this provision because they simply had discussions with their former Trugreen colleagues about their new position at Scott's.  They cite the unpublished Fourth Circuit case of *Hunter Group, Inc. v. Smith*[16] in support of their argument.  In *Hunter Group*, however, the contract prohibited the employee from "employ[ing] or solicit[ing] the employment of" her former colleagues.  The contractual prohibition here appears much broader: it precludes the defendants from "directly *or indirectly* induc[ing] or encourag[ing] any Trugreen employee or contractor to leave his/her position or to seek employment or association with any person or entity other than Trugreen."[17]  *Hunter Group* therefore appears to be of little use in construing the contract here.

---

[15]*System Concepts*, 669 P.2d at 426

[16]2001 WL 558146 (4th Cir. May 24, 2001).

[17]Pls.' Mem. in Supp. of Mot. for Preliminary Inj. (Doc # 20), Ex. A, at 2.

Finally, Scotts apparently has adopted and requires its employees to sign the same noncompetition agreement that Trugreen seeks to enforce here. If this is correct, it certainly makes the defendants' arguments regarding the contracts' enforceability less persuasive — if the noncompetition agreements are good enough for the defendants, they should likewise be good enough for Trugreen.

In sum, the evidence to this point appears to show a very high likelihood of success at trial. Admittedly, the court's impression comes without the benefit of full summary judgment briefing, and the court will reserve final judgment until all such briefing is complete. It appears, however, that this case would be amenable to quick resolution by such a motion. The court therefore enters the following scheduling order to facilitate prompt, final resolution of this matter.

## SCHEDULING ORDER

Defendants shall serve process on all unserved defendants no later than July 28, 2006.

The parties shall complete Rule 26(a) disclosures on or before August 31, 2006.

Fact discovery shall be completed by November 1, 2006.

The parties shall file any summary judgment motions on or before December 1, 2006. Responses shall be filed on or before January 12, 2007, and replies shall be filed on or before January 26, 2007. The court will hold a summary judgment hearing on February 6, 2007, at 3:00 p.m.

If the case is not resolved on summary judgment, the court will hold a final pretrial conference on March 20, 2007, at 3:30 p.m., and an eight-day trial beginning April 10, 2007.

So that the parties are prepared for trial, the plaintiffs shall designate their experts by December 15, 2006.  The plaintiffs' expert reports shall be filed that same day (December 15). The defendants shall designate rebuttal experts by January 12, 2007.  Defendants' expert reports shall be filed by January 31, 2007.  Expert discovery shall be completed by February 28, 2007.

The court also orders the parties to conduct a settlement conference on or before February 23, 2007.

## CONCLUSION

Trugreen's motion for a preliminary injunction (# 20) is DENIED because it has not made a sufficient showing of irreparable injury.  Money damages can adequately compensate Trugreen for its losses.  And because Trugreen has so persuasively shown a likelihood of success on the merits, the court orders this case to proceed on the accelerated scheduling order outlined above.

SO ORDERED.

DATED this 25th day of July, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge