IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| TRUGREEN COMPANIES, L.L.C., a<br>Delaware limited liability company, et al., | ) | Civil No. 1:06-CV-00024 BSJ |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER RE: ATTORNEY'S FEES** |
| vs. | ) | **& COSTS** |
| | ) | |
| MOWER BROTHERS, INC., a Utah<br>corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |

```
┌─────────────────────────────────┐
│            FILED                │
│  CLERK, U.S. DISTRICT COURT     │
│   June 18, 2013 (1:17pm)        │
│      DISTRICT OF UTAH           │
└─────────────────────────────────┘
```

* * * * * * * * *

The plaintiff TruGreen Companies, L.L.C. ("TruGreen") commenced the above-captioned action on February 8, 2006, alleging a number of claims against the defendants, including a number of former TruGreen employees, for breach of employment contracts, tortious interference with contract and with economic relationships, and unfair competition.[1] After pleadings were filed and discovery was largely completed, the court heard and considered the parties' Rule 56 motions and granted summary judgment or partial summary judgment in favor of most of the defendants.[2]

---

[1](*See* Complaint, filed February 8, 2006 (CM/ECF No. 1).) The case was originally assigned to Judge Paul G. Cassell. TruGreen filed an Amended Complaint on July 25, 2006 (CM/ECF No. 115), adding several defendants: Isaiah Plumley, Shannon Christensen, Paul Brower, James Murray, Richard Coffman, Tammy Roehr, Jessica Spencer, Margie Smith, Alfreda Egbert and Jason Beck.

[2](*See* Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, Granting Defendants' Motion to Strike Expert Report, and Denying Plaintiffs' Motion for Summary Judgment, filed February 13, 2007 (CM/ECF No. 253); Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment, filed June 8, 2007 (CM/ECF No.

(continued...)

As the matter progressed, the court certified three questions to the Utah Supreme Court[3] concerning "the proper measure of damages for the breach of an employment agreement, tortious interference with contractual and economic relationships, and violation of Utah's Unfair Competition Act";[4]  the Utah court accepted certification of two of the three questions,[5] and subsequently answered them.[6]  *See TruGreen Companies, L.L.C. v. Mower Bros., Inc.*, 2008 UT 81, 199 P.3d 929.

On December 30, 2008, the defendants filed their Motion for Final Summary Judgment and Attorney Fees, addressing TruGreen's remaining claims for breach of contract, tortious interference and unfair competition and seeking an award of attorney's fees pursuant to the Utah reciprocal attorney's fees statute, Utah Code Ann. § 78B-5-826 (2008), as well as Idaho Code Ann. § 12-120(3).[7]  The motion was briefed by the parties and was then addressed at a hearing on February 27, 2009, together with a motion by TruGreen to file a supplemental expert report in light of the Utah Supreme Court's response.  This court deferred consideration of the defendants'

--------

[2](...continued)
286).)

[3]*See* Utah R. App. P. 41(f).

[4](*See* Order Certifying Questions of Law to the Utah Supreme Court, filed June 8, 2007 (CM/ECF No. 287).)

[5](*See* Order of Acceptance, filed August 16, 2007 (CM/ECF No. 293).)

[6](*See* Order, filed January 20, 2009 (CM/ECF No. 304).)  After five years on the federal district bench, Judge Cassell had resigned from the court on November 5, 2007 to return to law school teaching, research and issue advocacy, and the matter was reassigned to this court on December 3, 2008.

[7](Defendants' Motion for Final Summary Judgment and Attorney Fees, filed December 30, 2008 (CM/ECF No. 299).)

summary judgment motion pending the submission of supplemental materials.[8]

After TruGreen submitted its supplemental expert reports in April 2009,[9] the defendants renewed their motion for summary judgment and attorney's fees in July 2009.[10]  They also moved to strike and exclude the testimony of TruGreen's experts.[11]  TruGreen filed memoranda in response,[12] and the defendants filed their reply memoranda.[13]  These motions were heard by the court on October 14, 2009, at which time the court requested further information on the question of net profits and took the matter under advisement.[14]

The court calendared the motions for further argument and consideration on February 25,

---

[8](*See* Minute Entry, dated February 27, 2009 (CM/ECF No. 317); Order Granting TruGreen's Motion for Leave to File Supplemental Expert Report, filed March 26, 2009 (CM/ECF No. 318).)

[9](*See* Notice of Conventional Filing, filed April 20, 2009 (CM/ECF No. 321).)

[10](Defendants' Motion for Summary Judgment and Attorney Fees and Costs, filed July 13, 2009 (CM/ECF No. 326).)

[11](Defendants' Motion to Strike and Exclude Expert Testimony of Theodor Tatos and Gil Miller, filed July 13, 2009 (CM/ECF No. 328).)

[12](*See* Memorandum in Opposition to Defendants' Motion for Summary Judgment and Attorney Fees and Costs, filed August 12, 2009 (CM/ECF No. 334); Plaintiff's Memorandum in Opposition to Defendants' Motion to Strike and Exclude Expert Testimony of Theodor Tatos and Gil Miller, filed August 12-13, 2009 (CM/ECF Nos. 335 & 337) (filed under seal).)

[13](*See* Reply Memorandum Supporting Defendants' Motion for Summary Judgment and Attorney Fees and Costs, filed September 4, 2009 (CMECF No. 344); Reply Memorandum Supporting Defendants' Motion to Strike and Exclude Expert Testimony of Theodor Tatos and Gil Miller, filed September 4, 2009 (CM/ECF No. 343).)  The defendants also moved to strike the affidavit and deposition testimony appended to TruGreen's response.  (Defendants' Motion to Strike Affidavit and Deposition Testimony Cited in Trugreen's Response to Defendants' Motion for Summary Judgment, filed September 4, 2009 (CM/ECF No. 341).)

[14](*See* Minute Entry, dated October 14, 2009 (CM/ECF No. 351).)  The additional information was submitted by counsel in letter form.

2010.  At the February 25th hearing, the court heard argument and granted the defendants'

motion for summary judgment on TruGreen's claims for breach of employment agreement,

tortious interference, and unfair competition claims against the remaining defendants, and

deferred ruling on the defendants' request for attorney's fees.[15]

On July 20, 2010, the eighteen former TruGreen employee defendants[16] filed a motion for

an award of attorney's fees pursuant to DUCivR 54-2 and the applicable Utah and Idaho statutes,

as well as their expert witness fees,[17] together with a memorandum,[18] affidavit, declarations and

exhibits in support.[19]   On August 6th, TruGreen filed its memorandum in opposition,[20] and on

August 23rd, the employee defendants filed their reply.[21]   The motion as heard on August 31st,

---

[15](See Minute Entry, dated February 25, 2010 (CM/ECF No. 382); Order Granting Defendants' Motion for Summary Judgment, filed July 6, 2010 (CM/ECF No. 367).)

[16]The movants are Jason Hiller, James Clogston, Rick Deerfield, David Van Acker and Tammy Roehr (the "Idaho Employees"), and Ryan Mantz, Lary Gaythwaite, Jim LeBlanc, David Stephensen, Jason Beck, Paul Brower, Richard Coffman, Alfreda Egbert, Margie Smith, Jessica Spencer, Shannon Christensen, James Murray, and Matt Walker (the "Utah Employees").

[17](Employee Defendants' Motion for Award of Attorney Fees and Costs, filed July 20, 2010 (CM/ECF No. 370).)

[18](Memorandum Supporting Employee Defendants' Motion for Award of Attorney Fees and Costs, filed July 20, 2010 (CM/ECF No. 371) ("Defs' Mem.").)

[19](Declaration of Erik. A. Olson Supporting Employee Defendants' Motion for Award of Attorney Fees and Costs, filed July 20, 2010 (CM/ECF No. 372) ("Olson Decl."); Affidavit of Talon C. Stringham Supporting Employee Defendants' Motion for Award of Attorney Fees and Costs, filed July 20, 2010 (CM/ECF No. 373) ("Stringham Aff."); Declaration of Randy Shumway in Support of Employee Defendants' Motion for Award of Attorney Fees, filed July 20, 2010 (CM/ECF No. 374) ("Shumway Decl.").)

[20](Memorandum in Opposition to Defendants' Motion for Award of Attorney Fees and Costs, filed August 6, 2010 (CM/ECF No. 376) ("TruGreen Mem.").)

[21](Reply Memorandum Supporting Employee Defendants' Motion for Award of Attorney
(continued...)

and the court took the matter under advisement pending the supplementation of the record with information concerning fees that the movants were *not* seeking to recover.[22]  The employee defendants filed their supplemental memorandum on September 7th,[23] to which TruGreen responded on September 28th,[24] followed on October 4th by the movants' reply.[25]

The supplemental briefing called the court's attention to *Hooban v. Unicity Int'l, Inc.*, 2009 UT App 287, 220 P.3d 485, a Utah appellate case addressing the scope of Utah's reciprocal attorney's fees statute, which was then pending on appeal before the Utah Supreme Court.  On November 12, 2010, the court sent notice to the parties indicating that it would await the outcome of the pending appeal in *Hooban* and inviting supplemental briefing once that case had been decided.[26]

On March 27, 2012, the Utah Supreme Court issued its opinion in the *Hooban* case, affirming the court of appeals' ruling.  *See Hooban v. Unicity Int'l, Inc.*, 2012 UT 12.  On April

---

[21](...continued)
Fees and Costs, filed August 23, 2010 (CM/ECF No. 378) ("Defs' Reply").

[22](*See* Minute Entry, dated August 31, 2010 (CM/ECF No. 383).)

[23](Supplemental Memorandum Supporting Employee Defendants' Motion for Award of Attorney Fees and Costs, filed September 7, 2010 (CM/ECF No. 379) ("Defs' Supp. Mem.").)

[24](Response in Opposition to Supplemental Memorandum Supporting Defendants' Motion for Award of Attorney Fees and Costs, filed September 28, 2010 (CM/ECF No. 386) ("TruGreen Supp. Opp.").)

[25](Reply to Trugreen's Opposition to Supplemental Memorandum Supporting Employee Defendants' Motion for Award of Attorney Fees and Costs, filed October 4, 2010 (CM/ECF No. 387) ("Defs' Supp. Reply").)

[26](*See* Notice, dated November 12, 2010 (CM/ECF No. 388).)

16th, counsel filed supplemental memoranda discussing the *Hooban* opinion,[27] and on June 21st, this court heard further argument on the pending motion and again took the matter under advisement.[28]

On July 3, 2012, the Utah Supreme Court issued an amended opinion in the *Hooban* case, superseding its March 27th opinion and altering paragraphs 10 and 26 of the opinion text. *See Hooban v. Unicity Int'l, Inc.*, 2012 UT 40, 285 P.3d 766.[29]

Having reviewed and considered the arguments of counsel and the parties' various written submissions (memoranda, affidavits, declarations, exhibits), as well as the Utah Supreme Court's amended *Hooban* opinion, this court concludes that as prevailing parties, the Idaho employee defendants are entitled to recover attorney's fees from TruGreen pursuant to Idaho Code Ann. § 12-120(3), but have not demonstrated an entitlement under Idaho law to an award of expert witness fees. The Utah employee defendants' claims for attorney's fees and expert witness fees, footed upon the language of their contracts with TruGreen and the Utah Reciprocal Fee Statute, should be denied because TruGreen's contract language would entitle TruGreen to reimbursement of attorney's fees and costs actually incurred, that is, fees and costs that the party actually paid or owes; the statute affords the Utah Employees the same access to attorney's fees and costs that the contract explicitly affords to TruGreen, but not greater access. The Utah

---

[27](Supplemental Memorandum Supporting Employee Defendants' Motion for Award of Attorney Fees, filed April 16, 2012 (CM/ECF No. 390) ("Defs' 2d Supp. Mem."); Supplemental Memorandum in Opposition to Defendants' Motion for Award of Attorney Fees and Costs, filed April 16, 2012 (CM/ECF No. 391) ("TruGreen 2d Supp. Opp.").)

[28](*See* Minute Entry, dated June 21, 2012 (CM/ECF No. 397).)

[29]Counsel filed no notice of supplemental authority or further supplemental briefing as to the amended *Hooban* opinion.

employee defendants incurred no personal liability for attorney's fees and expert witness fees that

were paid by their new employer in the defense of TruGreen's claims in this case, and have paid

no fees or costs for which they may be reimbursed under the language of TruGreen's contract.

**ANALYSIS**

The eighteen former TruGreen employee defendants seek an award of attorney's fees in

the amount of $876,170, together with expert witness fees of $286,354 and expenses of $3,732

for Mr. Rasmussen, and $45,621 in expert witness fees for Mr. Shumway.[30]  They seek that

award under either the Utah reciprocal attorney's fees statute, Utah Code Ann. § 78B-5-826

(2012), or Idaho Code Ann. § 12-120(3).[31]

**A Tale of Two Statutes**

The Utah Reciprocal Fee Statute reads:

> A court may award costs and attorney fees to either party that prevails in a civil
> action based upon any promissory note, written contract, or other writing executed
> after April 28, 1986, when the provisions of the promissory note, written contract,
> or other writing allow at least one party to recover attorney fees.

Utah Code Ann. § 78B-5-826 (2012).  "This provision consists of a conditional if/then statement:

(a) If the provisions of a written contract allow at least one party to recover attorney fees in a

civil action based upon the contract, (b) then a court may award attorney fees to either party that

prevails."  *Hooban v. Unicity Int'l, Inc.*, 2012 UT 40, ¶ 12, 285 P.3d 766, 768.  The purpose of

this statute is to eliminate "'unequal exposure to the risk of contractual liability for attorney

---

[30](*See* Defs' 2d Supp. Mem. at 8.)

[31]"[E]ntitlement to attorney's fees in a diversity action is governed by the same state law
that governs the substantive issues."  *Oklahoma Fixture Co. v. ASK Computer Sys.*, 45 F.3d 380,
380 (10th Cir. 1995) (citing *Bill's Coal Co., Inc. v. Board of Public Utilities*, 887 F.2d 242 (10th
Cir. 1989)).

fees.'"  *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 77, 201 P.3d 966, 980-81 (quoting

*Bilanzich v. Lonetti*,  2007 UT 26, ¶ 19, 160 P.3d 1041, 1047).[32]  The statute thus "affords to the

party not benefitted by a contractual attorney fee provision the same access to attorney fees that

the provision explicitly affords to the other party."  *PC Crane Service, LLC v. McQueen*

*Masonry, Inc.*, 2012 UT App 61, ¶ 23,  273 P.3d 396, 407-08.  While the language of the Utah

Reciprocal Fee Statute is discretionary (a court "*may* award costs and attorney's fees"),[33] the

Utah Supreme Court has explained that "to creat[e] a level playing field," the "courts should

award fees liberally under [the statute] where pursuing or defending an action results in an

unequal exposure to the risk of contractual liability for attorney fees."  *Bilanzich*, 2007 UT 26, at

¶¶ 18, 19, 160 P.3d at 1046.

  The Utah Reciprocal Fee Statute bears upon this case because TruGreen's employment

agreements with its former employee defendants in Utah included a unilateral attorney's fees and

costs provision: "Employee also acknowledges and agrees that Employee shall reimburse

---

   [32]*Bilanzich* explains that the statute

> was designed to "creat[e] a level playing field" for parties to a contractual dispute.
> *Anglin v. Contracting Fabrication Machining, Inc.*, 2001 UT App 341, ¶ 11, 37
> P.3d 267.  The statute levels the playing field by allowing both parties to recover
> fees where only one party may assert such a right under contract, remedying the
> unequal allocation of litigation risks built into many contracts of adhesion.  In
> addition, this statute rectifies the inequitable common law result where a party
> that seeks to enforce a contract containing an attorney fees clause has a significant
> bargaining advantage over a party that seeks to invalidate the contract.  The
> former could demand attorney fees if successful, while the latter could not. . . .

2007 UT 26, at ¶ 18, 160 P.3d at 1046 (citation omitted).

   [33] "[T]he language of the statute is not mandatory but allows courts to exercise discretion
in awarding attorney fees and costs."  *Bilanzich*, 2007 UT 26, at ¶ 17, 160 P.3d at 1046.

TruGreen for all attorneys' fees and costs incurred by it in enforcing any of its rights or remedies under this section or any other provision of this Agreement."[34]

In contrast, the referenced Idaho statute provides a mandatory attorney's fee award to a prevailing party independent of the contractual terms:

> (3)  In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.
> The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

Idaho Code Ann. § 12-120(3) (2010).  Under Idaho Code Ann. § 12-120(3), "the prevailing party in a civil action involving a commercial transaction based on a contract is entitled to an award of

---

[34](*See* Memorandum Supporting Defendants' Motion for Summary Judgment and Attorney Fees and Costs, filed July 13, 2009 (CM/ECF No. 327), at xviii ¶ 59.)  This fact remains uncontroverted.  (*See* Memorandum in Opposition to Defendants' Motion for Summary Judgment and Attorney Fees and Costs, filed August 12, 2009 (CM/ECF No. 334), at xxxv.)  "The statute is triggered only when the provisions of the contract would allow at least one party to recover fees if that party had prevailed under its theory of the case."  *Bushnell v. Barker*, 2012 UT 20, ¶ 11, 274 P.3d 968, 971 (citing *Hooban v. Unicity Int'l, Inc.*, 2012 UT 19, ¶ 32). The Utah Supreme Court offers a concrete example:

> If Hooban were a Unicity employee subject to a contract providing that the "employee shall pay the employer's attorney fees in an action establishing the employee's breach of the employment contract," and Hooban prevailed in an action by Unicity for breach of contract, Hooban would be entitled to recover his fees under section 826. This is, in fact, the classic, archetypal case for fee shifting under the statute.

*Hooban v. Unicity Int'l, Inc.*, 2012 UT 40, ¶ 27, 285 P.3d 766, 771.  Here, the Utah employee defendants argue in essence that their situation presents this "classic, archetypal case."  (*See* Defs' 2d Supp. Mem. at 4 ("The situation before this Court is the 'archetypal' situation described in *Hooban*.").

reasonable attorney fees." *Willie v. Bd. of Trustees*, 138 Idaho 131, 136, 59 P.3d 302, 307

(2002).[35] "Where a party alleges the existence of a contractual relationship of a type embraced by

section 12-120(3), . . . that claim triggers the application of the statute and a prevailing party may

recover fees even though no liability under a contract was established." *Farmers Nat. Bank v.*

*Shirey*, 126 Idaho 63, 73, 878 P.2d 762, 772 (1994) (citing *Twin Falls Livestock Comm'n Co. v.*

*Mid-Century Ins. Co.*, 117 Idaho 176, 184, 786 P.2d 567, 575 (Ct. App. 1989)); *see Lexington*

*Heights Development, LLC v. Crandlemire*, 140 Idaho 276, 287, 92 P.3d 526, 537 (2004)

("Where a party alleges the existence of a contract" with the scope of Idaho Code § 12–120(3),

"that claim triggers the application of the statute and the prevailing party may recover attorney

fees even if no liability under the contract is established."); *Miller v. St. Alphonsus Reg'l Med.*

*Ctr., Inc.*, 139 Idaho 825, 839, 87 P.3d 934, 948 (2004) (stating that "if a party alleges the

existence of a contractual relationship of the type embraced by Idaho Code § 12–120(3), that

claim triggers the application of the statute, and the prevailing party is entitled to an award of

attorney fees even though no liability under a contract was ultimately established").[36]

----

[35] "Idaho Code § 12-120 provides for the mandatory award of attorney's fees to the
prevailing party in actions on two kinds of claims," including "actions, regardless of amount, on
certain claims listed in Idaho Code § 12-120(3)."  D. Craig Lewis, *Idaho Trial Handbook* § 36:12
(2d ed. 2005).

[36] *Miller* also noted that "attorney fees are awardable under Idaho Code § 12–120(3) even
if there were other theories also asserted in support of the claim that would not have triggered the
application of the statute." *Id.* (citing *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 136
Idaho 466, 472, 36 P.3d 218, 224 (2001) (stating that attorney fees can still be awarded for a
specific claim, if a claim is of the type covered by Idaho Code § 12-120(3) "'even though a claim
is covered by other theories that would not have triggered application of the statute'" (quoting
*Brooks v. Gigray Ranches*, 128 Idaho 72, 79, 910 P.2d 744, 751 (1996)))).  "It has long been held
that '[t]he critical test is whether the commercial transaction comprises the gravamen of the
lawsuit; the commercial transaction must be integral to the claim and constitute a basis on which
(continued...)

The Idaho statute bears upon TruGreen's former Idaho employees in this case because

"[a]ctions brought for breach of an employment contract are considered commercial transactions,

subject to the attorney fee provision of I.C. § 12–120(3)."  *Mackay v. Four Rivers Packing Co.*,

145 Idaho 408, 415, 179 P.3d 1064, 1071 (2008) (citing *Willie v. Bd. of Trustees*, 138 Idaho at

136, 59 P.3d at 307 ("Actions brought for breach of an employment contract are considered

commercial transactions and are subject to the attorney fee provision of I.C. § 12-120(3).")

(citing *Treasure Valley Gastroenterology Specialists, P.A. v. Woods*, 135 Idaho 485, 492, 20

P.3d 21, 28 (Ct. App. 2001) (stating that "[a]ctions on employment contracts are subject to the

---

[36](...continued)
the party is attempting to recover.'" *Great Plains Equip.*, 136 Idaho at 471, 36 P.3d at 223
(quoting *Bingham v. Montane Resource Associates*, 133 Idaho 420, 426, 987 P.2d 1035, 1041
(1999)).

      Here, for § 12-120(3) to apply, the movants' employment contract must have comprised
the gravamen of TruGreen's lawsuit against them.

      In contrast, under the Utah Reciprocal Fee Statute, a party may recover only those fees
incurred with respect to the claimed breach of contract.  *See Anderson & Karrenberg v. Warnick*,
2012 UT App 275, ¶ 16,  289 P.3d 600, 605 ("the only attorney fees that Warnick could recover
are also those related to the breach of contract claim").  In *Warnick*, plaintiff's breach of contract
claim and its defense of the defendant's fraud counterclaim were covered "because if Warnick
had proved that the Agreement had been procured by fraud, A & K could not enforce it."  *Id.* at ¶
15.  Thus "[t]he claims covered by the Agreement's fees provision, and therefore the Reciprocal
Attorney Fees statute, were the breach of contract claim and the counterclaim for fraud."  *Id.* at ¶
18, 289 P.3d at 606; *cf. Chase v. Scott*, 2001 UT App 404, ¶¶ 15–17, 38 P.3d 1001, 1005
(holding that the defense of a rescission claim based on fraudulent misrepresentation was an
action to enforce the contract where the party succeeded in its defense against rescission, thus
entitling the prevailing party to attorney's fees).

      Defendants argue that "[t]he law allows a prevailing party to collect attorney fees and
costs on noncompensable claims if they substantially overlap with compensable claims," citing
*Jensen v. Sawyers*, 2005 UT 81, ¶ 128, 130 P.3d 325, 348-49, *Brown v. David K. Richards &
Co.*, 1999 UT App 109, ¶ 19, 978 P.2d 470, 475, and *First Gen. Servs. v. Perkins*, 918 P.2d 480,
486-87 (Utah Ct. App. 1996).  (Memorandum Supporting Defendants' Motion for Summary
Judgment and Attorney Fees and Costs, filed July 13, 2009 (CM/ECF No. 327), at 3.)  The cited
cases discuss statutory attorney's fees awarded to prevailing parties under the Utah privacy
protection (*Jensen*) and mechanics lien statutes (*Brown* and *Perkins*), respectively, but do not
address the Utah Reciprocal Fee Statute.

attorney fee provisions of § 12-120(3)" (citing *Clark v. State, Dep't of Health and Welfare*, 134

Idaho 527, 5 P.3d 988, 993 (2000); *Property Mgmt. W., Inc. v. Hunt*, 126 Idaho 897, 899, 894

P.2d 130, 132 (1995); *Atwood v. Western Constr., Inc.*, 129 Idaho 234, 241, 923 P.2d 479, 486

(Ct. App. 1996)))); *see also Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 391 (Idaho 2005)

("[T]he prevailing party in an action brought for breach of an employment contract is entitled to

an award of fees under § 12-120(3), on the basis that an employment contract constitutes a

contract for the purchase or sale of services under that statute.").

### The Employee Defendants' Attorney's Fees Claims

### The Idaho Employees

From the foregoing, it proves apparent that breach of TruGreen's employment contracts

was the gravamen of TruGreen's lawsuit against the Idaho employee defendants;[37] that the Idaho

Employees obtained the dismissal of TruGreen's claims against them; and that each is thus a

"prevailing party" within the meaning of § 12-120(3),[38] entitled to an award of reasonable

---

[37](*See, e.g.*, Amended Complaint, filed July 25, 2006 (CM/ECF No. 115).)

[38]TruGreen submits that "an analysis and determination of who is a 'prevailing party'
within the language of the statute falls within the sound discretion of the trial court."
(Memorandum in Opposition to Defendants' Motion for Award of Attorney Fees and Costs, filed
August 6, 2010 (CM/ECF No. 376), at 7 (citing *Rockefeller v. Grabow*, 82 P.3d 450, 457 (Idaho
2003) ("The determination of who is the prevailing party in a lawsuit [and therefore possibly
entitled to attorney fees and costs] is committed to the sound discretion of the trial court"); and
*Boulden Constr. Co. v. H.F. Magnuson Co.*, 992 P.2d 751, 762 (Idaho 1999) ("Determination of
who is a prevailing party is committed to the sound discretion of the trial court and will not be
disturbed absent abuse of discretion.")); *see also* Idaho R. Civ. P. 54(d)(1)(B).) TruGreen argues
that the employee defendants are not "prevailing parties" under either the Utah or Idaho statutes.
Having reviewed and considered the prior summary judgment rulings in this case, this court is
satisfied that both the Idaho Employees and the Utah Employees have "prevailed" in defending
TruGreen's contract-based claims. *See Olsen v. Lund*, 2010 UT App 353, ¶¶ 7-12, 246 P.3d 521,
523-24; *Reynolds v. Trout Jones Gledhill Fuhrman, P.A.*, 154 Idaho 21, 293 P.3d 645, 648-51

(continued...)

-12-

attorney's fees pursuant to that statute.

### The Utah Employees

As to the Utah Employees, TruGreen's breach of contract claims were premised on employment agreements providing that "Employee also acknowledges and agrees that Employee shall reimburse TruGreen for all attorneys' fees and costs incurred by it in enforcing any of its rights or remedies under this section or any other provision of this Agreement."[39]

### "All Attorneys' Fees and Costs Incurred"

At first glance, the language of TruGreen's contract entitles it to recover "all attorneys' fees and costs incurred by it in enforcing any of its rights and remedies" under the contract, that is, the fees and costs that it *actually paid* or is obligated to pay. To *incur* attorney's fees or costs ordinarily means "[t]o suffer or bring on oneself," as in "a liability or expense," *Black's Law Dictionary* 836 (9th ed. 2009), or "to run into" or "to become liable or subject to" and "bring down upon oneself." *Merriam-Webster's Collegiate Dictionary* 632 (11th ed. 2003).

In *Centennial Archaeology, Inc. v. Aecom, Inc.*, 688 F.3d 673 (10th Cir. 2012), the court of appeals observed as much in construing the language of Fed. R. Civ. P. 37(a):

> In common usage an attorney fee is what one pays to or owes one's attorney. In other words, it is the amount *incurred* by a client for the attorney's services. The literal language of fee-shifting statutes is consistent with this usage. For example, the fee-shifting statute for civil-rights actions, enacted in 1976, provides that "the

---

[38](...continued)
(2013) (defendants who obtained summary judgment on statute of limitations grounds were "prevailing parties" under Idaho Code Ann. § 12-120(3)).

[39](Memorandum in Support of Motion for Summary Judgment of Defendants Shannon Christensen, Jessica Spencer, Margie Smith, Alfreda Egbert, Matt Walker, Paul Brower, James Murray, Richard Coffman, and Jason Beck, filed December 22, 2006 (CM/ECF No. 186), at xvii ¶ 45.)

court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.  Because the statute declares the fee to be a 'cost,' the natural reading would be that the fee should be treated the same as other costs, which are "limited to actual outlays or obligations," *Neal v. Honeywell Inc.*, 191 F.3d 827, 833 (7th Cir. 1999).  Indeed, the statute governing verification of bills of costs, which has been in effect since 1948, states: ''Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit . . . that such item is correct and has been *necessarily incurred* in the case." 28 U.S.C. § 1924 (emphasis added).  A reader limited to considering only the statutory language in isolation would conclude that the "attorney fee" recoverable by a prevailing party under § 1988 is limited to what the party owes or has paid ("necessarily incurred").

*Id.* at 678-79 (emphasis in original).  Yet the court of appeals rejected this construction, at least in the context of fee-shifting statutes: "the courts construe the term *attorney fees* to mean, not the amount actually paid or owed by the party to its attorney, but the value of attorney services provided to the party."  *Id.* at 679.

> As stated in *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), "[A] 'reasonable attorney's fee' [is] reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the [party], no more and no less."  In other words, an "attorney fee" arises when a party uses an attorney, regardless of whether the attorney charges the party a fee; and the amount of the fee is the reasonable value of the attorney's services.  The payment arrangement for an attorney can vary widely—hourly rate, flat rate, salary, contingency fee, pro bono. What the client pays or owes the attorney may not accurately reflect the reasonable value of the services.

*Id.* (emphasis in original).  In the Tenth Circuit's view, this reading of fee-shifting provisions is faithful to their apparent purpose:

> As we understand it, that purpose—generally shared by fee-shifting statutes and rules—is to protect and further legal rights by removing a disincentive to vindicating those rights (namely, the cost of retaining attorneys to pursue the rights) and creating a disincentive to violating them or failing to compensate victims for violations (namely, the cost of paying for the victims' attorneys).  *See id.* at 93, 109 S.Ct. 939 (''the purpose of § 1988 was to make sure that competent counsel was available to civil rights plaintiffs''); *cf. Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S. Ct. 2455, 65 L. Ed. 2d 48 (1980) (discovery

-14-

> sanctions "deter those who might be tempted to [sanctionable] conduct in the
> absence of such a deterrent" (internal quotation marks omitted)).

*Id.* The use of the term "incurred" in describing the fees to be awarded does not alter the

outcome:

> the adjective *incurred* adds nothing (except, perhaps, emphasis) when modifying
> the term *attorney fee*, because in common usage a fee is something incurred.
> Thus, although the Supreme Court has never squarely stated that the inclusion of
> the word incurred in a fee-shifting statute does not affect when a fee is
> recoverable, it has repeatedly inserted the word *incurred* in its description of the
> meaning of fee-shifting statutes that do not contain the word. . . .  And the Court
> has even described two fee-shifting statutes—one with and one without the word
> *incurred*—as using "virtually identical language." *Astrue v. Ratliff*, — U.S. —,
> 130 S.Ct. 2521, 2529, 177 L.Ed.2d 91 (2010) (referring to § 1988 and the Equal
> Access to Justice Act provision, 28 U.S.C. § 2412(d)(1)(A)). . . .
> * * * *
> [I]n interpreting such statutes, courts should look to their statutory purposes rather
> than focusing on the inclusion of a word (*incurred*) that, in ordinary usage, would
> be read into the statute in any event.  In light of the clear purposes of the
> fee-shifting provisions of Rule 37, we believe that Centennial is entitled to an
> attorney-fee award even though its lawyers were working under a fixed fee.

*Id.* at 681, 682 (emphasis added).[40]

The question now before this court is whether TruGreen's contractual attorney's fees

---

[40]The panel acknowledged that other courts had reached different conclusions about fees
*incurred*:

> We recognize that on a few occasions circuit courts have indicated that
> when a fee-shifting statute allows recovery only for attorney fees "incurred" by a
> party (as in Rule 37(a)(5) but not Rule 37(b)(2)(C)), the party must actually have
> paid or owe the fee to qualify for reimbursement.  *See, e.g.*, *In re Espy*, 338 F.3d
> 1036, 1038–39 (D.C. Cir. 2003) (Ethics in Government Act); *Wisconsin v.
> Hotline Indus., Inc.*, 236 F.3d 363, 366–68 (7th Cir.2000) (28 U.S.C. §
> 1447(c)—removal statute); *Marre v. United States*, 38 F.3d 823, 828–29 (5th Cir.
> 1994) (26 U.S.C. § 7430(c)(1)(B)(iii)—tax statute).  But even though some, or all,
> of those cases may have been correctly decided because of the purposes served by
> the particular fee-shifting statute at issue, we disagree with the reliance on the
> word *incurred*.

688 F.3d at 681 (emphasis in original).

-15-

provision, when read in tandem with the Utah Reciprocal Fee Statute, is sufficiently analogous in

its language and purpose to the fee-shifting rules construed in *Centennial Archaeology* to lead to

the same conclusion.  That question is prompted by the fact that "Scotts—who has no contractual

relationship with TruGreen—has covered all legal expenses" for the Utah employee defendants,

who "have not incurred a dime in fighting the battle for Scotts."[41]

**"Reimbursement" of Attorney's Fees**

The pertinent contract language obligates the Utah employee defendants to "*reimburse*

TruGreen for all attorneys' fees and costs incurred by it in enforcing any of its rights or remedies

under" their employment agreements with TruGreen.  *Reimbursement* generally refers to

"repayment" or "indemnification,"  *Black's Law Dictionary* 1399 (9th ed. 2009), and to

*reimburse* is  "to pay back to someone" or "to make restoration or payment of an equivalent to"

some expense, *Merriam-Webster's Collegiate Dictionary* 1049 (11th ed. 2003), or "[t]o repay (a

sum of money which has been spent or lost)."  *Oxford English Dictionary* (3d ed. 2009), *at*

http://www.oed.com/view/Entry/161535.  Even more than "incurred," the use of "reimburse" in

TruGreen's contracts suggests that the amount to be recovered is the total amount of attorney's

fees and costs actually paid or owed by TruGreen[42]—"all attorneys' fees and costs incurred"—in

contrast to the rules provisions construed in *Centennial Archaeology*, which obligate a party or

counsel to "pay the reasonable expenses, including attorney's fees, caused" by a party's failure to

---

[41](Memorandum in Opposition to Defendants' Motion for Award of Attorney Fees and Costs, filed August 6, 2010 (CM/ECF No. 376), at 4.)

[42]TruGreen's memoranda offer little or nothing that specifically describes the drafting history of its attorney's fees provision or evidence of any course of performance under that provision in other cases of alleged breach of contract by past TruGreen employees that may aid in construing the scope of the terms used.

comply with a court order, or "pay the movant's reasonable expenses incurred in making" a successful motion to compel.[43]

If TruGreen's contractual language entitles it to reimbursement for all of the attorney's fees and costs it actually pays or owes in enforcing its contractual rights, then the Utah Reciprocal Fee Statute affords to the Utah employee defendants "the same access to attorney fees that the provision explicitly affords to the other party,"[44] namely the right to be reimbursed for all attorney's fees and costs they actually paid or owe for defending against TruGreen's contractual claims—in this case, essentially nothing.[45]

### *International Billing* and *Grow*

The Utah Employees point to cases such as *International Billing Svcs., Inc. v. Emigh*, 84 Cal. App. 4th 1175, 101 Cal. Rptr. 2d 532 (3d Dist. 2000),[46] and *Grow Co., Inc. v. Chokshi*, 959

---

[43]Moreover, the use of the word "all" with respect to fees and costs refers to "the whole amount, quantity or extent of," or "the whole number or sum of," *Merriam-Webster's Collegiate Dictionary* 31 (11th ed. 2003), suggesting a finite, discrete and existing known amount or quantity—attorney's fees and costs actually incurred, *i.e.*, paid or owed. *Accord Oxford English Dictionary* (3d ed. 2009), *at* http://www.oed.com/view/Entry/5151 (defining *all* as "The whole amount, quantity, extent, or compass of; the whole of"). In contrast, as *Centennial Archaeology* indicates, "reasonable expenses" or "reasonable attorney's fees" are not moored to the total amount actually spent.

[44]*PC Crane Service, LLC*, 2012 UT App 61, at ¶ 23, 273 P.3d at 408.

[45]The Utah employee defendants entered into employment contracts with Scotts that expressly contemplated a lawsuit by TruGreen. For example, under a section entitled "Benefits," one contract stated: "'We will provide all legal protection and pay all attorney fees and costs should your previous employer (Chemlawn/TruGreen) elect to pursue any employment contract issues. You agree to cooperate with the legal team in providing the best defense of any and all claims.'" (TruGreen Supp. Opp. at 3.) Other contracts made similar promises that Scotts would "defend . . . claims made against you by previous employer." (*Id.* at 3-4.)

[46]The California appellate court soon repudiated some, but not all of the language of the
(continued...)

-17-

A.2d 252 (N.J. Ct. App. 2008), as supporting an award of fees and costs even where they did not pay or owe the fees and costs themselves.[47]

In *International Billing*, a group of engineers left the employment of plaintiff and began working for a new company. The former employer then sued the engineers and their new employer for breach of a confidentiality agreement that contained a unilateral fee provision very similar to TruGreen's contracts.[48] After finding in favor of the former employees on the alleged breach, the *International Billing* court considered the question whether to award attorney fees to the employees under California's reciprocal fee statute, even though their new employer had actually paid the full cost of their defense.[49] In awarding fees to the former employees, the court

---

[46](...continued)
*International Billing* opinion. *See, e.g., M. Perez Co. v. Base Camp Condominiums Ass'n No. One*, 111 Cal. App. 4th 456, 470, 3 Cal. Rptr. 3d 563, 574 (3d Dist. 2003) (stating that "there is no sound policy or legal basis for the broad rule adopted by this court in *International Billing Services*" concerning fee claimants and judicial estoppel).

[47]The Utah Employees also cite to *Skistimas v. Old World Owners Ass'n*, 127 Cal. App. 4th 948, 952, 26 Cal. Rptr .3d 319 (2005) ("[T]here is ample case law holding that a litigant may recover attorney fees even though he has not paid for them out of his own pocket. … California courts have routinely awarded fees to compensate for legal work performed on behalf of a party pursuant to an attorney-client relationship, although the party did not have a personal obligation to pay for such services out of his or her own assets."). But *Skistimas* involved the defendants' recovery of attorney's fees as prevailing parties in an action involving the enforcement of real estate covenants, conditions and restrictions—*statutory* fees under Calif. Civ.Code, § 1354(c) (2005), not contractual attorney's fees. *Skistimas* was only certified for partial publication, excluding the opinion text discussing the attorney's fee award. 26 Cal.Rptr.3d 319, at n.*. The published portion of *Skistimas* discusses an award of expert witness fees under California's offer of judgment rule, Calif. Civ. Proc. Code § 998 (2006), also not a contractual remedy.

[48]The fee provision read: "You promise to reimburse Company for any legal fees, liability, or loss which Company incurs as a result of any unauthorized disclosure or use of Confidential Information by You." 84 Cal. App. 4th at 1179, 1180 (citation omitted).

[49]The engineers' engagement with their attorneys provided that "[e]ach of you is
(continued...)

examined the meaning of "incurs" and "reimburse":

> To "incur" means "To run or fall into (some consequence, usually undesirable or injurious); to become through one's own action liable or subject to; to bring upon oneself." (5 Oxford English Dict. (2d ed. 1933) p. 188, col. b.; see Black's Law Dict. (7th ed. 1999) p. 771, col. b ["To suffer or bring on oneself (a liability or expense)"]; 1 Abbott's Law Dict. (1879) p. 595, col. b. [liability "cast upon them by act or operation of law"].) The California Supreme Court has construed the term as used in section 1717 to mean generally "'become liable' for" a fee, "i.e., to become obligated to pay it." (*Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259] . . . .)

> Here, the Engineers became *liable* to pay the fee even if they were not the source of payment the attorney agreed to look to first. Therefore they incurred the fees and, by virtue of the reciprocity provision of section 1717, they are entitled to an award of fees. Recall that section 1717, subdivision (a) provides in relevant part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then *the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs*." (Italics added.) Thus, by statute, the prevailing party is "entitled to reasonable attorney's fees," providing only the fees provision itself provides for fees incurred to enforce the contract.
> . . . .
> IBS makes another, narrower, objection: The fees provision speaks in terms of reimbursement of fees. Reimbursement ordinarily means to pay back or refund. Since the Engineers never actually paid fees, there is nothing to refund to them. In our view this reads "incurs" out of the agreement, and is largely another iteration of the indemnity argument we have rejected. . . .

84 Cal. App. 4th at 1192-93, 1194 (emphasis in original); *see id.* at 1183 ("The use of

'reimburse' does not compel the conclusion the provision is simply an indemnity provision.").[50]

---

[49](...continued)
ultimately responsible for payment of our fees. However, we will send our bills to North American Capital, which will have the responsibility to pay our bills." *Id.* at 1181. In fact, the law firm sent all of its bills to NAC, the new employer, who paid them directly. *Id.* at 1192, 1195.

[50]At least in this respect, the *International Billing* analysis appears to comport with

(continued...)

The *International Billing* court concluded that the balance of equities favored the engineers:

> It is difficult to see how IBS is aggrieved by the serendipity of the Engineers, who discovered how to defend the lawsuit without having to pay out of their pockets.
>
> . . .
>
> It is IBS who seeks a windfall.  After bringing a suit and demanding fees, IBS wants to avoid paying the prevailing party fees based on the 'fortuitous circumstances' the Engineers had arranged a means of defending themselves from this nonmeritorious lawsuit. . . .   The fact remains if NAC failed to pay, the Engineers were throughout the litigation contractually obligated to step in and fund the defense of the lawsuit.  That contractual obligation was a liability.  The fact no bills remained unpaid at the time of the award does not change this result.

*Id.* at 1193-94 (citation omitted).[51]

---

[50](...continued) California law.  *See, e.g.,* Richard M. Pearl, *California Attorney Fee Awards* (Cont. Ed. Bar 1999) (Attorney Fee Awards Based on Contract, § 6.16, p. 6-20 (observing that the claim "that a losing party . . . should not have to pay attorney fees if the prevailing party did not, in fact, have to pay" them "has been rejected numerous times")); *cf. Skistimas v. Old World Owners Ass'n*, 127 Cal. App. 4th 948, 26 Cal. Rptr. 3d 319, 321 (2005) ("[I]n cases involving a variety of statutory fee-shifting provisions, California courts have routinely awarded fees to compensate for legal work performed on behalf of a party pursuant to an attorney-client relationship, although the party did not have a personal obligation to pay for such services out of his or her own assets.").

[51]The *International Billing* court also offered a few cogent observations regarding the bigger picture:

> Time and again in civil cases, often those with parties willing and able to spend thousands or tens of thousands of dollars on the issue, the fees debate assumes a life of its own.  "The prospect of court-awarded attorney fees plays a significant part in determining a strategy for initiating or defending litigation. Litigation costs (including the potential fee award) can be enormous, sometimes rivaling or even exceeding the amount involved on the merits." . . .   The very squabbling contained in the numerous cases discussed above and in the briefs but not mentioned in this opinion shows that fee litigation has become a specialty of some lawyers and a "fees phase" of cases is foreordained.  This wasteful consumption of judicial resources and client money serves no public purpose and impairs the image of the legal profession.

84 Cal. App. 4th at 1186, 1187 (quoting Pearl, *California Attorney Fee Awards* (Overview, § 1.2, (continued...)

-20-

This case differs from *International Billing* because the Utah Employees did not sign engagement letters with the attorneys who represented them obligating them to pay the attorney's fees incurred the defense of TruGreen's claims for breach of contract.  Nine of the engagement letters between the Utah Employees and their attorneys recite that:

> You have requested that the Firm represent you in the Pending Lawsuit. Scotts has authorized the Firm to represent you, along with the other individuals who we currently are representing, as well as other employees or former employees of Scotts who we may agree to represent in the future (collectively the "Clients), and has agreed to pay the attorneys' fees and costs associated with your defense, provided that you agree to the conditions set forth in this letter.

The "conditions set forth" in the letters include their agreement "to be available upon reasonable notice for depositions, conferences, and court appearances, provide available documentation and information to us as requested, comply with all applicable court orders, and cooperate fully with us in these matters," as well as considerations of privilege, confidentiality and potential conflicts that inhere in the joint representation of clients, but do not obligate the Utah employee defendants to pay any of the attorney's fees incurred in the course of their joint representation.

Four of the engagement letters recite that:

> After you were served with the Original Complaint, you requested that the Firm represent you in the Pending Lawsuit, Scotts authorized the Firm to represent you, along with the other Original Named Employees, and agreed to pay the attorney's fees and costs associated with your defense.  The Firm agrees to such representation, . . .

but likewise do not obligate the Utah Employees to pay any attorney's fees.

Thus, in contrast to *International Billing*, it cannot be said that the Utah Employees were "throughout the litigation contractually obligated to step in and fund the defense of the lawsuit,"

---

[51](...continued)
p. 1–3).)

and that such "contractual obligation was a liability."[52]  Here *they incurred no liability at all*.

In the *Grow* case,  a former employee and the company with whom he became associated were sued by his former employer for alleged misappropriation of trade secrets and breach of a confidentiality agreement.  The trial court found in favor of the former employee and indicated that he was entitled to his attorney's fees under the terms of a prior settlement agreement.[53]  On appeal, the *Grow* court examined "the discrete point raised by Grow to defeat Chokshi's claim for fees," namely "that Chokshi may not recover fees because he has not paid fees to his attorneys," as "the litigation was financed by others," namely his new employer.  959 A.2d at 453, 471.  The court rejected the former employer's argument that the case law allowing attorney fees to a party whose fees were paid by a third party all involved some sort of indemnity agreement, such as liability insurance:

> We are not persuaded.  The existence of an obligation on the part of the actual payor of fees to the benefited party is not relevant because, as a general matter, it would be inequitable for a person or entity in [plaintiff]'s position to be able to avoid its contractual obligation to pay fees simply because another has provided financing to the wronged party.  Quite simply, such a ruling could have in some cases the disturbing consequence of permitting a deep-pocketed party to wage extensive and ruinous litigation against a less well-to-do litigant, whose only chance of being made whole—compensation at the end of the day based upon the other party's contractual promise to pay fees—would be dashed if the impecunious litigant would have to demonstrate that he or she actually paid the

---

[52]*International Billing* thus proves not to be as "directly on point" as counsel suggested it was. (Defs' Supp. Reply at 2.)

[53]As *Grow* explained, "the settlement agreement contains the parties' stipulation that should Grow commence an action barred by its covenant not to sue, then the parties encompassed by the settlement agreement's terms 'shall be entitled to recover from Grow all their attorney's fees, expenses and costs of suit incurred in connection therewith.'" 959 A.2d at 257.  This language differs from that drafted by TruGreen, which speaks of "reimburs[ing] TruGreen for all attorneys' fees and costs incurred by it in enforcing any of its rights or remedies" under the contracts.

attorneys' fees during the course of the litigation.  We prefer the adoption of a rule
that would permit a person less able to expend large sums to defend such an
action the flexibility to obtain the benefit of another's payment of fees without
losing the valuable right to the shifting of fees in its favor for which it had
previously bargained.  Accordingly, we conclude that whatever arrangement [the
new employer] has made with [the employee] regarding the payment of his fees is
not relevant in ascertaining whether or to what extent [plaintiff] is liable to pay
fees to [the employee].

*Id.* at 471–72.  For the *Grow* court, "[t]he critical fact in this analysis is that Chokshi has incurred

fees even if they were paid by another."  *Id.* at 471.[54]

Accordingly, we conclude that whatever arrangement Pharmachem has made with
Chokshi regarding the payment of his fees is not relevant in ascertaining whether
or to what extent Grow is liable to pay fees to Chokshi, . . . just as the fee award
due a prevailing party pursuant to a fee-shifting statute is "determined
independently of the provisions of the fee agreement between that party and his or
her counsel," *Szczepanski v. Newcomb Medical Center, Inc.*, 141 N.J. 346, 358,
661 A.2d 1232 (1995).

*Id.* at 472-73 (citations omitted).[55]

*Grow* also cited to *Automated Business Companies, Inc. v. NEC America, Inc.*, 202 F.3d

1353, 1355–56 (Fed. Cir. 2000), and *Tidewater Patent Development Co. v. Kitchen*, 421 F.2d

680, 680–81 (4th Cir. 1970), both of which involved an award of *statutory* attorney's fees in a

---

[54]*Grow* does not specify what fee arrangements were made between Chokshi, his
attorneys and Pharmachem beyond saying that "Chokshi disclosed that Pharmachem has paid his
attorneys throughout the course of this litigation."  959 A.2d at 269.

[55]TruGreen attempts to distinguish *Grow* by asserting that "[t]he New Jersey trial court
awarded attorneys' fees to the defendant employee although his fees were paid by a co-defendant
corporation . . . based on the notion that the specific language of the settlement agreement was
'broad enough to permit an award of fees based on Grow's alleged breach of the agreement' to a
non-party to the settlement agreement."  (TruGreen Supp. Opp. at 6.)
To the contrary, the trial court in *Grow* had "granted that part of Grow's motion that
sought a dismissal of Pharmachem's counterclaim for an award of attorneys' fees based on the
settlement agreement.  The judge reasoned that Pharmachem was not a signatory to the
settlement agreement and did not fall within the settlement agreement's description of the class
of persons entitled to its benefits."  959 A.2d at 257.

patent infringement action.  In *Automated Business*, the Federal Circuit observed that

> [i]n determining the compensatory quantum of an award under § 285 in an egregious case, courts should not be, and have not been, limited to reimbursement of only those amounts actually paid by the injured named party. . . .  In a case such as this in which a company's closely related, grandparent company assisted in the defense of an infringement action properly deemed exceptional and assumed some of the legal expenses, the company is no less due an award of attorney fees for the total amount it would have paid had it defended against the action on its own.

202 F.3d at 1356 (citing *Mathis*, 857 F.2d at 754, 8 USPQ2d at 1033).[56]  In *Tidewater*, the manufacturers of accused infringing products came to the aid of a vendee who had been accused of infringing, and ultimately directed and assumed the full cost of the litigation.  The Fourth Circuit approved the award of statutory attorney's fees to the prevailing party, the defendant vendee, even though the manufacturers, who were not named parties, had paid for the defense of the case.[57]

The pertinent statute, 35 U.S.C. § 285, provides that "[t]he court in exceptional cases

---

[56]The Utah employee defendants quoted this passage in support of their attorney's fees request in this case.  (*See* Defs' Reply at 5-6.)

[57]The *Tidewater* court's reasoning differed from that in *Automated Business*:

The action had been brought by the plaintiff for the purpose of asserting its patent claims against Middlebrooke-Lancaster, Inc. and E. Frederics, Inc. after correspondence with them, and their control and management of the defense was open and fully known to the plaintiff, and, of course, to the nominal defendant. As such, an adverse judgment would have been fully binding upon Middlebrooke-Lancaster, Inc. and E. Frederics, Inc., as well as upon their customer, Kitchen, the purely nominal defendant.

Under the circumstances, we think Middlebrooke-Lancaster, Inc. and E. Frederics, Inc., the only parties on the defendant's side with any substantial interest in, and with absolute control of, the defense, were parties within the meaning of 35 U.S.C.A. § 285.

421 F.2d at 681 (footnote omitted).

-24-

may award reasonable attorney fees to the prevailing party."  The purpose of the statute has been

described by this court as "to compensate the prevailing party for its monetary outlays in the

prosecution or defense of the suit."  *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573,

1578, 220 USPQ 490, 493 (Fed. Cir. 1983).  In addition, § 285 serves as a deterrent to "improper

bringing of clearly unwarranted suits" for patent infringement.  *Mathis v. Spears*, 857 F.2d 749,

754, 8 USPQ 2d 1029, 1033 (Fed. Cir. 1988).  Aside from its discussion of equitable principles,

*Grow* does not explain why contractual attorney's fees are so much akin to statutory attorney's

fees in "exceptional" patent cases that both should be governed by the same principles.

### Contractual Attorney's Fees Provisions

"It is worth remembering that the American Rule is that the losing party in litigation is

not required to reimburse the prevailing party's attorney fees."  *Robbins v. Chronister*, 435 F.3d

1238, 1244 (10th Cir. 2006) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of

Health & Human Res.*, 532 U.S. 598, 602 (2001)).   "An award of attorney fees under 42 U.S.C.

§ 1988," for example, "is a departure from general practice, presumably designed as an incentive

to plaintiffs to engage in litigation to vindicate civil rights."  *Id.*  In contrast, a contractual

attorney's fees provision is not an expression of public policy encouraging the public vindication

of civil rights, or discouraging the pursuit of frivolous patent litigation, or the protection of

economically disadvantaged litigants; it simply seeks to ensure that at least one of the contracting

parties receives the economic benefit of its bargain when enlisting judicial assistance in enforcing

the terms of its contract.  *Cf. Management Servs. Corp. v. Development Assocs.*, 617 P.2d 406,

409 (Utah 1980) ("If plaintiff is required to defend its position on appeal at its own expense

plaintiff's rights under the contract are thereby diminished.")[58]

Cases such as *International Billing* and *Grow* go a step farther, suggesting that a prevailing party in contract litigation should enjoy the benefit of a windfall in being "reimbursed" for attorney's fees and costs that it did not actually pay.  Taking into account that a party relying on a reciprocal attorney's fees statute likely is "in an economically disadvantageous position," the purposes of such statutes (to ensure mutuality of remedy and to prevent oppressive use of fee provisions) support "'a reciprocal remedy for a prevailing party who has not actually incurred legal fees, but whose attorneys have incurred costs and expenses in defending the prevailing party on the underlying agreement.'"  84 Cal. App. 4th 1194, 1195 (quoting *Beverly Hills Properties v. Marcolino*, 221 Cal. App. 3d Supp. 7, 11, 270 Cal. Rptr. 605 (1990)).  Yet to "ensure mutuality of remedy," wouldn't *both* parties be entitled to recover fees they did not actually pay, or does one party become more "equal" than the other?

This interpretive approach easily strays from the language of the contract itself.

Under Utah law, "If provided for by contract, the award of attorney fees is allowed only

---

[58]As the Utah court explained:

The Colorado Appellate Court, in *Zambruck v. Perlmutter Third General Builders*, 510 P.2d 472 (Colo. App. 1973), stated the most cogent reason for the allowance of such fees on appeal:

> The purpose of a provision for attorney's fees is to indemnify the creditor or the prevailing party against the necessity of paying an attorney's fee and to enable him to recover the full amount of the obligation.

627 P.2d at 409.  A contractual attorney's fees provision likewise serves as a "make whole" remedy at the trial court level, securing the benefit of the parties' bargain.  Contractual attorney's fees provisions thus differ in purpose from the fee-shifting rules and statutes examined in *Centennial Archaeology*, discussed *supra*.

in accordance with the terms of the contract." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988

(Utah 1988) (citing *Trayner v. Cushing*, 688 P.2d 856, 858 (Utah 1984) (citing *Turtle*

*Management, Inc. v. Haggis Management, Inc.*, 645 P.2d 667, 671 (Utah 1982) ("If by contract,

the award of attorney's fees is allowed only in accordance with the terms of the contract. 25

C.J.S. Damages § 50 (1966)."))); *see Equitable Life & Cas. Ins. Co. v. Ross*, 849 P.2d 1187, 1194

(Utah Ct. App.) (interpreting an attorney fee provision that allowed all fees to be recovered and

stating that "[i]f provided for by contract, attorney fees are awarded in accordance with the terms

of that contract" (citing *Dixie State Bank*, 764 P.2d at 988)), *cert. denied*, 860 P.2d 943 (Utah

1993).[59]

     Here, TruGreen's contract speaks of being reimbursed for "all attorneys' fees and costs

incurred by it in enforcing" the contract, rather than being allowed "reasonable attorney's fees"

for simply having prevailed in a dispute.  Mutuality of remedy suggests that the Utah Employees

would likewise be reimbursed for all fees and costs incurred by them in defending TruGreen's

contractual claims.  As the court explained in *PC Crane Serv., LLC v. McQueen Masonry, Inc.*:

> [Section 78B–5–826] affords to the party not benefitted by a contractual attorney
> fee provision the same access to attorney fees that the provision explicitly affords

---

[59]As an expression of the contracting parties' intent, the contractual language controls:

"When interpreting a contract, a court first looks to the contract's four corners to
determine the parties' intentions, which are controlling." *Bakowski v. Mountain
States Steel, Inc.*, 2002 UT 62, ¶ 16, 52 P.3d 1179. "[T]he parties' intentions are
determined from the plain meaning of the contractual language. . . ." *Glenn v.
Reese*, 2009 UT 80, ¶ 10, 225 P.3d 185 (internal quotation marks omitted); *Pugh
v. Stockdale & Co.*, 570 P.2d 1027, 1029 (Utah 1977) ("The beginning point of
interpretation of a contract is . . . the ordinary and usual meaning of the words.").

*Strohm v. ClearOne Communications, Inc.*, 2013 UT 21, ¶ 34, --- P.3d ----, 2013 WL 1412134, at
*8.

the other party.  The statute does not create an independent right to a fee award
that the contract's attorney fee provision would not allow to either party simply
because the fee provision is one-sided.

2012 UT App 61, at ¶ 23, 273 P.3d at 407-08.  No one has suggested that TruGreen's contract

language would entitle it to be reimbursed for attorney's fees and costs it did not actually pay or

owe, had it prevailed in this case.

For its part, TruGreen cites no authority construing contractual attorney's fees provisions

in a fashion contrary to that of *International Billing* or *Grow*.  Instead, TruGreen relies on the

Utah Reciprocal Fee Statute, arguing that "the fact that Scotts—who has no contractual

relationship with TruGreen—has covered all legal expenses for its employee Defendants in this

lawsuit does not corroborate their averment of being defenseless individuals burdened with an

'unequal exposure of risk' against TruGreen," and that this court "has the discretion to deny the

Utah Defendants' attorney fees and costs—paid for by Scotts—and to avoid the inevitable

windfall which Scotts seeks in successfully avoiding judgment solely on the issue of damage

calculation," citing *Bilanzich*, 160 P.3d at 1047.[60]

Nothing in *Bilanzich*, *Hooban*, or other cases compels the conclusion that the Utah

Reciprocal Fee Statute prescribes a "one-size-fits-all" reading of contractual attorney's fees

---

[60](Memorandum in Opposition to Defendants' Motion for Award of Attorney Fees and
Costs, filed August 6, 2010 (CM/ECF No. 376), at 6, 7.)  TruGreen also argues that the employee
defendants fail to allocate their claimed attorney's fees between compensable and non-
compensable (i.e., non-contractual) claims.  *Id.* at 9-13.  In turn, the employee defendants argue
that "[w]here TruGreen's tort claims against its former employees are based on the same core
facts as its breach of contract claims, it would be overly burdensome and impractical for counsel
to distinguish time entries among these related claims." ((Memorandum Supporting Defendants'
Motion for Summary Judgment and Attorney Fees and Costs, filed July 13, 2009 (CM/ECF No.
327), at 4.)  TruGreen's fee allocation argument is belied by the fact that TruGreen's pleaded
"non-contractual" claims incorporate by reference *every* allegation comprising TruGreen's
contractual claims. (*See* Amended Complaint, filed July 25, 2006 (CM/ECF No. 115), *passim*.)

provisions.[61]  The Utah Employees acknowledge that "[t]his statute was designed to create a level

playing field for parties to a contractual dispute."[62]  As such, the Utah Employees should reach

parity with TruGreen's entitlement to be reimbursed for all attorney's fees and costs it incurred,

but a "level playing field" does not mandate a windfall.  *See Bilanzich*, 2007 UT 26, at ¶ 20, 160

P.3d at 1047 ("[I]n the spirit of leveling the playing field, courts should avoid using [the

Reciprocal Fee Statute] to expose one party to a disproportionate risk of paying attorney fees that

would result in a windfall to the other party.").

    Scotts' funding of the defense of the Utah Employees in this case was not gratuitous

happenstance; it was a bargained-for contractual benefit of their new employment.  Unlike the

defendants in *International Billing*, the Utah Employees owed *no* legal obligation to pay Durham

Jones & Pinegar's fees or litigation costs under the terms of their engagement letters, and thus

did not "incur" fee obligations that they could conceivably be called upon to pay.  Under the

terms of TruGreen's contracts, as equalized by the Utah Reciprocal Fee Statute, the Utah

Employees may seek reimbursement "for all attorneys' fees and costs incurred by [them] in"

---

[61]Indeed, *Hooban* acknowledged "the discretion conferred by statute to shift fees to a prevailing party," and "the discretion recognized in the statute in deciding whether to award fees," and observed that "a district court does not abuse its statutory discretion by treating the contract as if it occupies the fee-shifting field and declining to award fees under the statute." 2012 UT 40, at ¶ 20 n.4, 285 P.3d at 770 n.4.  Statements elsewhere in the *Hooban* opinion that a prevailing party "would be entitled to his fees under section 826," must be read in light of this acknowledgment.  2012 UT 40, at ¶¶ 27, 31-32, 285 P.3d at 771, 772.

[62](Memorandum Supporting Defendants' Motion for Summary Judgment and Attorney Fees and Costs, filed July 13, 2009 (CM/ECF No. 327), at 1 (citing *Bilanzich*, 2007 UT 26, at ¶ 18).)  The Utah Reciprocal Fee Statute was designed "to 'creat[e] a level playing field' for parties to a contractual dispute . . . by allowing both parties to recover fees where only one party may assert such a right under contract, remedying the unequal allocation of litigation risks built into many contracts of adhesion."  *Bilanzich*, 2007 UT 26, at ¶ 18, 160 P.3d at 1046.

defending TruGreen's claims under those contracts, but where they have neither owed nor paid any such fees and costs, there are simply none to reimburse.

Given the language of the TruGreen contracts, read in light of the Utah Reciprocal Fee Statute and the nature of the relationship between the Utah Employees, Scotts and their attorneys, this court declines to grant the Utah Employees an award of attorney's fees against TruGreen to reimburse the attorney's fees incurred by Scotts on their behalf in this case.[63]  Scotts freely undertook to bear the entire burden of paying those fees in consideration for the Utah Employees agreeing to enter into employment with Scotts, and the Utah Employees have enjoyed the benefit of that bargain.

### The Employee Defendants' Claim for Expert Witness Fees

The employee defendants submit that under State law, they are entitled to reimbursement for expert fees irrespective of rules or statutes providing for limited "taxable" costs, citing *Dale K. Barker Co. v. Bushnell*, 2010 UT App 189, 237 P.3d 903, *cert. denied*, 245 P.3d 757 (2010).[64]

---

[63]The Utah Employees initially asserted that "Utah's bad faith statute provides an alternative basis for an attorney fee award based on the frivolous nature of TruGreen's claims, including for example the noncompete claims brought after TruGreen was given advance notice of the lack of any post-termination covenant not to compete.  See Utah Code Ann. § 78-27-56(a) ('In civil actions, the court shall award reasonable attorney's fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith . . . .')."  (Defs' Mem. at 4 n.2.); *see Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 9, 122 P.3d 556, 559 ( "Section 78–27–56 is 'narrowly drawn and 'not meant to be applied to all prevailing parties.' . . . While an action 'must be meritless to award attorney fees under section 78–27–56, the mere fact that an action is meritless does not necessarily mean that the action is also brought in bad faith." (quoting *In re Sonnenreich*, 2004 UT 3, ¶¶ 46, 49 , 86 P.3d 712 (internal quotation omitted))); *Blum v. Dahl*, 2012 UT App 198, ¶ 9, 283 P.3d 963, 966. But they did not press this theory in their subsequent memoranda, and this court is not inclined to address it as though they had.

[64](Defs' Supp. Reply at 8.)  At the same time that the employee defendants filed their
(continued...)

-30-

In *Bushnell*, the Utah Court of Appeals explained that the "costs awardable under this contract do go well beyond the costs that are allowed under rule 54(d) of the Utah Rules of Civil Procedure." 2010 UT App 189, at ¶ 17, 237 P.3d at 909 (citing *Moore v. Smith*, 2007 UT App 101, ¶ 56, 158 P.3d 562 (interpreting a contract that stated "that the defaulting party shall pay all costs and expenses" to include more than just costs allowed under Rule 54(d)), *cert. denied*, 182 P.3d 910 (Utah 2007); *Chase v. Scott*, 2001 UT App 404, ¶¶ 19–20, 38 P.3d 1001 (determining that the undefined term "costs" in "the [c]ontract should be read to include those costs that were associated with the litigation but would not be included under a regular Rule 54(d) cost award");[65] and *Morgan v. Morgan*, 795 P.2d 684, 686 (Utah Ct. App.1990) (defining Rule 54(d)

---

[64](...continued)
motion for award of attorney fees and costs, they filed their Bill of Costs (CM/ECF No. 368), seeking $24,489.18 in taxable costs pursuant to Fed. R. Civ. P. 54(d)(1) and DUCivR 54-2. The Clerk of the Court deferred the taxation of costs in light of TruGreen's arguments concerning the defendants' status as prevailing parties. That question having now been resolved, the Clerk may proceed to examine the Bill of Costs and tax costs as appropriate. *See* DUCivR 54-2(c).

[65]In *Chase v. Scott*, 2001 UT App 404, 38 P.3d 1001, the Utah Court of Appeals explained that

> "Contracts 'should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions.'" *Lee v. Barnes*, 1999 UT App 126, ¶ 11, 977 P.2d 550 (quoting *ELM, Inc. v. M.T. Enters., Inc.*, 968 P.2d 861, 863 (Utah Ct. App. 1998) (internal citation omitted)). According to Rule 54(d), "costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" Utah R. Civ. P. 54(d). In order to not render the term "costs" superfluous, the Contract should be read to include those costs that were associated with the litigation but would not be included under a regular Rule 54(d) cost award. "[T]here may be expenses associated with litigation that are necessary, but which nonetheless are not properly taxable as [statutory or rule-based] costs." *Young v. State*, 2000 UT 91, ¶ 21, 16 P.3d 549. Again, in order to give effect to the term "costs" in the Contract, we hold that "costs" should not be limited by case law interpreting Rule 54(d).

(continued...)

-31-

"costs" as "those fees which are required to be paid to the court and to witnesses, and for which the statutes authorize to be included in the judgment") (citation and internal quotation marks omitted)).

Idaho law also appears to award nontaxable costs when provided for by contract. *See, e.g.*, *Execulines Ltd. v. Tel-America of Salt Lake City, Inc.*, 121 Idaho 621, 624, 826 P.2d 1333, 1336 (Ct. App. 1991) (remanding to trial court for redetermination of award of costs and attorney fees in a manner consistent with the parties' written contract, which provided that "[s]uch fees and costs shall include, but not be limited to, service of process costs, filing fees, arbitration, court and court reporter costs, investigation costs, expert witness fees and fees and costs attributable to appellate review").  But Idaho is one of thirty-one States that do not provide any statutory reciprocity for unilateral contractual attorney's fees provisions.  *See* Jeffrey C. Bright, *Unilateral Attorney's Fees Clauses: A Proposal to Shift to the Golden Rule*, 61 Drake L. Rev. 65, 119 & n.170 (2012).  The TruGreen contractual attorney's fees and costs provision is plainly unilateral, and absent a reciprocal attorney's fee statute, it affords the Idaho Employees no basis for seeking an award of nontaxable expert witness fees.

**The Idaho Employees' Expert Witness Fees**

Having no contractual basis for recovery of expert witness fees from TruGreen, the Idaho defendants are left to the applicable rules governing the taxation of costs.  Idaho R. Civ. P. 54(d)(1)(C)(8) provides that a prevailing party may be awarded expert witness fees as taxable costs: "Reasonable expert witness fees for an expert who testifies at a deposition or at a trial of

---

[65](...continued)
2001 UT App 404, at ¶ 20, 38 P.3d at 1006.

an action not to exceed the sum of $2,000 for each expert witness for all appearances."

Idaho R. Civ. P 54(d)(1)(D) further provides for the award of "discretionary costs" in certain

circumstances:

> (D)  Discretionary Costs. Additional items of cost not enumerated in, or in an
> amount in excess of that listed in subparagraph (C), may be allowed upon a
> showing that said costs were necessary and exceptional costs reasonably incurred,
> and should in the interest of justice be assessed against the adverse party. The trial
> court, in ruling upon objections to such discretionary costs contained in the
> memorandum of costs, shall make express findings as to why such specific item
> of discretionary cost should or should not be allowed. In the absence of any
> objection to such an item of discretionary costs, the court may disallow on its own
> motion any such items of discretionary costs and shall make express findings
> supporting such disallowance.

In *Hayden Lake Fire Protection Dist. v. Alcorn*, 141 Idaho 307, 312, 109 P.3d 161, 166 (2005),

the court observed that "[d]iscretionary costs may include 'long distance phone calls,

photocopying, faxes, travel expenses' and additional costs for expert witnesses." 141 Idaho at

314, 109 P.3d at 168 (citing *Auto. Club Ins. Co. v. Jackson*, 124 Idaho 874, 880, 865 P.2d 965,

971 (1993); and *Bailey v. Sanford*, 139 Idaho 744, 755, 86 P.3d 458, 469 (2004) (citing *Turner v.

Willis*, 116 Idaho 682, 686, 778 P.2d 804, 808 (1989))).  But "[t]his Court has always construed

the requirement that a cost be 'exceptional' under I.R.C.P. 54(d)(1)(D) to include those costs

incurred because the nature of the case was itself exceptional."  *Id.*

Here, the Idaho Employees do not argue (and have made no showing) that this case is

somehow "exceptional" within the meaning of Idaho R. Civ. P. 54(d)(1)(D).  Nor have they

allocated their claimed expert witness fees with reference to their expert witnesses' testimony in

deposition for purposes of Idaho R. Civ. P. 54(d)(1)(C).

The Idaho Employees thus have not established a legal basis under Idaho law for an

award of expert witness fees in this case.

**The Utah Employees' Expert Witness Fees**

The Utah Employees' claim for an award of expert witness fees against TruGreen rests on the same footing as their attorney's fees claim: the language of TruGreen's contracts read in light of the Utah Reciprocal Fee Statute, which speaks of both costs and attorney's fees. Because Scotts paid the defendants' expert witness fees in this case on the same basis as the attorney's fees incurred in defense of TruGreen's claims, the Utah Employees' claim for reimbursement will be denied on the same basis as their attorney's fees claim. From the record, it appears that the Utah Employees did not become personally liable for payment of the expert witness fees at any time, and thus did not incur nontaxable "costs" for which they may seek reimbursement.[66]

---

[66]As the court of appeals explained in *Chaparral Resources, Inc. v. Monsanto Co.*, 849 F.2d 1286 (10th Cir. 1988):

> In a diversity case, federal law controls in regard to the assessment of costs. *Bosse v. Litton Unit Handling Systems, Division of Litton Systems, Inc.*, 646 F.2d 689, 695 (1st Cir.1981); *see* Bartell, Taxation of Costs and Awards of Expenses in Federal Court, 101 F.R.D. 553, 555 (1984); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2669 (1983). "[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987). Thus, unless authorized by statute or express agreement, a party's expert witness fees are recoverable only up to the [$40]-per-day statutory limit applicable to any witness. . . .

*Id.* at 1291-92 (footnote omitted) (citing *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1550 (10th Cir. 1987); *Cleverock Energy Corp. v. Trepel*, 609 F.2d 1358, 1363 (10th Cir. 1979), *cert. denied*, 446 U.S. 909 (1980)); *cf. Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1178-79 (10th Cir. 2000) (concluding that costs must be awarded pursuant to mandatory Colorado cost-shifting statute to the extent they constitute "costs other than attorneys' fees" under Fed. R. Civ. P. 54(d)(1) and are not preempted by a federal statute such as 28 U.S.C. § 1821, and to the extent, if at all, they constitute "related non-taxable expenses" under Fed. R. Civ. P. 54(d)(2)).

**CONCLUSION**

Based upon the foregoing, the Idaho Employees as prevailing parties are entitled to recover attorney's fees pursuant to Idaho Code Ann. § 12-120(3) taxable as costs in the amount of **Fourteen Thousand Eight Hundred Twenty-Two Dollars ($14,822.00)**, but they have not demonstrated an entitlement under Idaho law to an award of expert witness fees against TruGreen.  For the reasons explained above, the court has concluded that the Utah Employees' claims for attorney's fees and expert witness fees, footed upon the language of their contracts with TruGreen read in light of the Utah Reciprocal Fee Statute, should be denied.  An award of attorney fees based upon a contract is allowed only in accordance with the terms of the contract, and the Utah Reciprocal Fees Act affords the Utah employee defendants the same access to attorney fees and costs that the contract provision explicitly affords TruGreen, *viz.*, reimbursement of attorney's fees and costs that they actually paid or for which they incurred liability in connection with the defense of TruGreen's contractual claims.  Here, the Utah Employees neither paid nor owed any such attorney's fees or costs.  Therefore,

**IT IS ORDERED** that the Employee Defendants' Motion for Award of Attorney Fees and Costs, filed July 20, 2010 (CM/ECF no. 370), is GRANTED IN PART and DENIED IN PART.

DATED this 18th day of June, 2013.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge

-35-